## STATE v GRUBBS

Common Pleas Court, Hamilton Co.

No. 47075. Decided March 2, 1940

Carl W. Rich, Prosecuting Attorney, Cincinnati; Simon Leis and Gordon Scherer, Asst. Prosecuting Attorneys, Cincinnati, for state.

Arthur C. Fricke, Cincinnati, and Chauncey D. Pichel, Cincinnati, for Grubbs.

## OPINION

By MACK, J.

This case is one of two indictments for murder in the first degree arising out of the homicides of Clara DeMarcia and Thomas True. The defendant was heretofore in two indictments charged with murder in the second degree for said homicides.

Upon trial of the indictment involving the homicide of True the jury disagreed, after several had voted for a verdict of manslaughter.

Thereupon, the prosecuting attorney presented the evidence to a different grand jury which returned the two indictments hereinbefore mentioned.

In this indictment for the homicide of Clara DeMarcia we three judges have been designated to hear the evidence and fix punishment after a plea of guilty was entered.

Upon full consideration of the evidence presented, and without reciting same, we are of the opinion that this homicide was of the premeditated character that justifies such indictment for murder in the first degree.

Our law permits on the trial of such indictment a verdict and death sentence, or a verdict and sentence recommending mercy and confining defendant in the penitentiary for life without any power of the parole board in such case, but leaving intact the Governor's constitutional power of pardon, reprieve, etc.

The two different sentences were doubtless prompted by the idea that in cases of aggravated circumstances death should be the sentence, but that in other cases life imprisonment would be justified by humane consideration.

Upon review of the evidence herein we find that this homicide being perpetrated in jealousy and rage there were not in the instant case those aggravated circumstances which call for a death sentence and accordingly we recommend mercy be extended to defendant.

By WOESTE, J.

The evidence in this case clearly discloses that the accused Joe Grubbs and

the deceased, Clara DeMarcia, had been enamored of each other for a period of eight years, and that during the past year they had planned to be married. The accused made preparations to establish a home. During recent years he had provided clothing, furniture and other necessities of life for Miss DeMarcia. During recent months Clara DeMarcia's affections were apparently alienated by another suitor. This fact angered the accused to the extent that when, on September 29, 1939, he was informed of the fact that Miss DeMarcia and the other suitor were to be together, he obtained a gun and met them upon their return to Miss DeMarcia's home. He states that his intention was to threaten them, and states further that upon accosting them the suitor reached for his hip pocket, whereupon the accused fired in self-defense inflicting the fatal wounds. He left the scene of the murder, visited a friend who advised him to surrender, but instead he went to another friend's house where he was apprehended the next day. He did not leave the immediate neighborhood of the crime.

The present indictment was returned by the grand jury at the January, 1940 term of the Common Pleas Court. On January 22nd, the accused pleaded not guilty; on February 26th, after the jurors' names had been drawn to try him, he retracted his plea of not guilty and entered a plea of guilty to murder generally, waived a trial by jury and requested that he be tried by three judges as authorized by law. He is represented by able counsel.

His plea of guilty indicates an appreciation of the fact that the circumstances do warrant a finding of guilt. In the presence of this plea of guilty the court in enjoined by law to determine the degree of the crime of murder of which the accused was guilty, that is, was he guilty of first degree murder unaccompanied by recommendation of mercy; was he guilty of first degree murder with the recommendation of mercy; murder in the second degree or manslaughter?

Because of the testimony present to the effect that the accused waited for the return of the deceased to her home, with gun in hand, it would seem that the elements of deliberation and premeditation, such as to constitute murder in the first degree, were present. However, the court is of the opinion that although premeditation and deliberation were present the crime was not conceived as the result of a plan, carefully deliberated upon, but rather upon an impulsive decision conceived in jealousy and rage attendant upon the alienation of the decedent's affection by another.

The evidence is clear that the accused bore a good reputation both as a worker and as a member of the community. This evidence is obtained from his employer and others who knew him rather intimately.

The circumstances proved would indicate that the death penalty in this case is not necessary to accomplish the purposes of the penal law.

It is therefore found that the defendant is guilty of murder in the first degree with the recommendation of mercy, and, by way of sentence, he will be confined in the Ohio Penitentiary during his natural life. This penalty excludes pardon by the board of pardon, or parole by the board of managers of the Ohio Penitentiary. His only prospect of being at liberty in the future must be by way of pardon by the governor.

By MORROW, J.

This defendant was indicted for murder in the second degree. At the trial the jury disagreed. He then was indicted by another grand jury for murder in the first degree, and, by authority of §13448-2, GC, plead guilty generally to murder. This court of three judges, provided by statute, has the task of determining the degree of the crime, and pronouncing sentence accordingly.

It is well settled that the court "in view of all of the facts and circumstances disclosed by the evidence," and pursuant to §12400, GC, shall determine

whether the death penalty be imposed, or recommend mercy to itself and sentence the defendant to imprisonment during life. In short, the provisions of the statute mean, in effect, that there are two penalties for first degree murder and, in this case, the judges are to decide which penalty shall be imposed.

We find in this case that there was deliberation and premeditation, and we are not concerned with the lesser degrees of homicide. The mercy recommendation provision is contained in all the first degree murder statutes. (§§12400, 12401, 12402, 12402-1). We might say that the Ohio law recognizes that some deliberate and premeditated homicides are worse than others, and extends to the jury (the judges, as in this case) the discretion of visiting death upon the perpetrator of more revolting offenses; and, on the other hand, permitting the jury (the judges) to decree that some such offenses may merit something less than the extreme penalty.

The court must consider the situation in the same manner as would a jury. Premeditation and deliberation distinguishes the offense of first degree murder, and by his plea the defendant confessed to such "contrived murder."

We may be pardoned for referring to Shakespeare's Tragedies as illustrated in various sorts of first degree murders.

The first murderer, in Richard III, a calloused paid assassin; the king in Hamlet, who poisoned his predecessor, thereby gaining a throne and a consort; the Macbeths spurred by ambition, and doing to death their noble guest; Hamlet, incontinently slaying the spying Polonius; Brutus, with certain savage grandeur stabbing his friend to save Rome, and finally, Othello, who smothered his wife in a fit of jealous rage.

In appraising the characters of these murderers we would say, probably, that they differed in the depth of their iniquity,—certainly that Othello was not as depraved as the first murderer in Richard III, or Brutus as the king in Hamlet.

Reverting to our modern times, would any one compare the neurotic Harry K. Thaw with Bruno Hauptman, and denominate them men of equal wickedness?

In Ohio, under the law, jurors (and judges) may grant mercy to first degree murderers who burn down houses to kill the inmates; who kill in the act of robbery, burglary, derailing railroad trains, and resisting officers of the law; also in such a case as the present, where a man kills in a jealous rage the woman whom he desires to possess, and to deny to another.

We are justified in considering the history of the case. A grand jury indicts for second degree murder, a petit jury fails to convict the homicide in any degree, and is discharged upon a disagreement. Before the matter was brought to this court, therefore, some twenty-seven citizens chosen by law, have considered his offense without calling upon the defendant to stand trial for first degree murder, and without convicting him of any lesser offense.

We are not bound by this record in any way, but it indicates that this case properly may be listed in the category of those first degree murder cases, which, we feel, fall somewhat short of the heinous and appalling crimes which the legislature had in mind to punish by the extreme penalty of electrocution, by leaving it open to the court to visit the hardly less severe penalty of life imprisonment upon other murderers.

There is no question about the horrible seriousness of this offense, but we would find it more difficult to extend mercy to a paid assassin, a poisoner, a railroad wrecker, or a homicidal robber or burglar.

We recommend that mercy be extended to this defendant.